IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB BANSCHBACH, | CV 15-00107-H-DLC-JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DR. KOHUT, | |
| Defendant. | |

Plaintiff Jacob Banschbach, an inmate proceeding in forma pauperis and without counsel, filed a Complaint pursuant to 42 U.S.C. § 1983, alleging Dr. Kohut sexually assaulted him and denied him medical care. (Doc. 1.) Dr. Kohut filed a motion for summary judgment, arguing that Mr. Banschbach failed to exhaust his administrative remedies. (Doc. 8.) Having considered the parties' arguments and submissions, the undersigned finds that Dr. Kohut met his burden of demonstrating that administrative remedies were available and that Mr. Banschbach failed to properly utilize those remedies with regard to his claim that Dr. Kohut sexually assaulted him. The motion for summary judgment should be

1

granted on that claim. There is no dispute, however, that Mr. Banschbach

exhausted his denial of medical care claim. The motion for summary judgment

should be denied on that claim.


Mr. Banschbach's Motion for Temporary Restraining Order (Doc. 19)

should be denied.

## I.   <u>SUMMARY JUDGMENT STANDARD</u>

The Ninth Circuit in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en

banc), held that the proper procedural device for determining whether

administrative remedies have been exhausted is a motion for summary judgment.

*Id.* at 1168. Summary judgment is appropriate if there is no genuine issue of

material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial

burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress

& Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie

showing that summary judgment is appropriate, the burden shifts to the opposing

party to show the existence of a genuine issue of material fact. *Id.* On summary

judgment, all inferences should be drawn in the light most favorable to the party

opposing summary judgment. *Id.* at 159.

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

By notice provided on February 19, 2016 (Doc. 12), Mr. Banschbach was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II.   ALLEGATIONS

Mr. Banschbach alleges Dr. Kohut withheld pain medications and cut him off his medications when Dr. Kohut refused to see him for hernia checks. He alleges Dr. Kohut took advantage of the situation so he could sexually assault him. He alleges Dr. Kohut did this between 30 and 50 times from 2011 to 2014 and also made sexual comments to him. (Doc. 1 at 6.) He further alleges that Dr. Kohut caused him physical pain by not following his Veterans Affairs doctors and by not giving him Tramadol and/or cutting him off Tramadol without warning. Mr. Banschbach alleges Dr. Kohut did this so he would have to reschedule and Dr. Kohut could sexually assault him under the guise of a hernia exam. (Doc. 1 at 6.)

## III.   FACTS

Mr. Banschbach is an inmate at the Montana State Prison (MSP). (Defendant's Statement of Undisputed Facts (SUF), Doc. 10 at ¶ 1.) MSP has an "Inmate Grievance Program" that allows inmates to appeal staff conduct. (SUF, Doc. 10 at ¶ 2, citing Inmate Grievance Program, Doc. 11-15 at § III(B)(1); Affidavit of Billie Reich, Doc. 11.) An Initial Classification Summary is generated for each inmate when he arrives at MSP, which denotes the date that the inmate was oriented with the Prison Rape Elimination Act ("PREA"). (SUF, Doc. 10 at ¶ 3, citing Reich Aff., Doc. 11 at ¶ 5.) As part of PREA orientation, inmates are instructed on the Inmate Grievance Program, including the process and procedures. (SUF, Doc. 10 at ¶ 4, citing Reich Aff., Doc. 11 at ¶ 5.) Mr. Banschbach completed PREA orientation in March, 2011, and was apprised of the Grievance Program procedures then. (SUF, Doc. 10 at ¶ 5, citing Reich Aff., Doc. 11 at ¶ 6; Classification Summary, Doc. 11-16.)

The MSP Grievance Process consists of four steps: an informal resolution form, an inmate grievance form, an appeal to the warden/administrator, and an appeal to the division of corrections. The inmate must complete all steps of the MSP Grievance Process for remedies to be exhausted. (SUF, Doc. 10 at ¶ 6, citing Grievance Policy, Doc. 11-15 at §§ III(E), III(F), III(I), III(K).) "If an inmate's action requested is granted, he will not be allowed to appeal the decision, and it is

4

understood he has exhausted all administrative remedies." (SUF, Doc. 10 at ¶ 7, citing Grievance Policy, Doc. 11-15 at § III(D)(6).)

Mr. Banschbach did not submit a grievance alleging that Dr. Kohut sexually assaulted or made inappropriate comments toward him until November 4, 2015. (SUF, Doc. 10 at ¶ 8, citing November 4, 2015 informal grievance, Doc. 11-4 at 2; Reich Aff., Doc. 11 at ¶ 19.) On November 4, 2015, Mr. Banschbach filed an informal resolution form claiming Dr. Kohut performed unnecessary groin checks and made sexual comments to him from 2011 through 2013. He requested to be seen by a different doctor. MSP Staff replied that inmates may not choose their provider, but that Mr. Banschbach could request the presence of a third party during examinations. His request was denied. (SUF, Doc. 10 at ¶ 9, citing November 4, 2015 informal grievance, Doc. 11-4 at 2; Reich Aff., Doc. 11 at ¶ 15.) Mr. Banschbach submitted a grievance form on December 5, 2015, alleging that "Doctor Kohut has used my vulnerability as an inmate and my hernia/groin injury to his advantage in the past to perve out on me and make sexual comments." He again requested to be seen by a different provider. (SUF, Doc. 10 at ¶ 10, citing December 5, 2015 formal grievance, Doc. 11-4 at 1; Reich Aff., Doc. 11 at ¶ 16.)

The MSP Inmate Grievance Policy requires inmates to state specific instances of staff conduct that violate MSP Policy. The inmate must submit a

grievance within five days of the incident being grieved. (SUF, Doc. 10 at ¶ 11, citing Grievance Policy, Doc. 11-15 at § III(E), III(F)(2).) On December 11, 2015, Mr. Banschbach's Grievance Form was returned as not processed because he referred to past incidents that were outside the time frame for filing grievances and he did not give specific dates of incidents. (SUF, Doc. 10 at ¶ 12, citing December 5, 2015 formal grievance, Doc. 11-4 at 1; Reich Aff., Doc. 11 at ¶ 16.) Mr. Banschbach did not resubmit a grievance alleging any specific incidents of misconduct. (SUF, Doc. 10 at ¶ 13, citing Reich Aff., Doc. 11 at ¶ 17.) Mr. Banschbach did not grieve any allegations of sexual misconduct by Doctor Kohut on any other occasion. (SUF, Doc. 10 at ¶ 14, citing Reich Aff., Doc. 11 at ¶ 20.)

Mr. Banschbach exhausted his administrative remedy with regard to his medical care with grievances 3007, 3978, 4537, and 5361. These grievances did not include allegations that Doctor Kohut withheld pain medications because Mr. Banschbach refused to submit to hernia checks. (SUF, Doc. 10 at ¶ 17.)

In Grievance 3007, Mr. Banschbach exhausted his administrative remedies with regard to a specific medication, Tramadol. (SUF, Doc. 10 at ¶ 18, citing May 9, 2012 grievance, Doc. 11-4.) On March 17, 2012, Mr. Banschbach filed a formal grievance (#3007), complaining that he no longer had Ultram and asking to be placed back on Ultram. (March 17, 2012 grievance, Doc. 1-1 at 15.) In response

to Mr. Banschbach's grievance, medical staff stated: "Seen by Dr. Piranian 3/27/12 explained Ultram is not recommended for chronic use, discussed consult/referral for nerve block which you refused to consider. You indicated waiting until you are out to have this resolved." (SUF, Doc. 10 at ¶ 18, quoting Doc. 1-1 at 15.) Mr. Banschbach appealed this decision to the Warden on April 25, 2012, and was told that he had been evaluated by medical staff and that long-term Ultram use was not an option. (Doc. 1-1 at 14.) Mr. Banschbach appealed that decision to the Corrections Division on May 9, 2012. His appeal was denied on June 1, 2012. (Doc. 1-1 at 12.)

In Grievance 3978, Mr. Banschbach asked to be seen by a pain specialist on January 10, 2013. The response indicated: "You were seen by MD Kohut on 1-10-13. Medications were ordered, please follow tx plan regarding medications. At this time referral to a pain specialist is not indicated." (Doc. 1-1 at 22.) Mr. Banschbach appealed this denial to the Warden on February 8, 2013, complaining that he was being denied the medications he needed and indicating that prior to his incarceration he had been treated for years and did well on methadone, Tramadol, and medical marijuana. The response indicated: "The Medical Director reviewed the information and supports the decision and clinical judgment of Dr. Kohut." (Doc. 1-1 at 21.) On March 7, 2013, Mr. Banschbach filed an appeal to the

corrections division, indicating that he was being forced to live with chronic pain because he was denied the medications he needed. He stated that the medications he was denied were Ultram/Tramadol, methadone, and medical marijuana. The grievance was denied on March 18, 2013. (Doc. 1-1 at 19-20.)

In Grievance 4537, Mr. Banschbach sought treatment from a neurologist. He first submitted an informal resolution form asking to see a certified neurologist/nerve pain specialist of his choice on June 11, 2013. The response to the grievance indicated that he had seen MSP providers multiple times for his symptoms but the "findings do not indicate the need for a specialty visit at this point in time." (Doc. 1-1 at 28.) Mr. Banschbach filed a formal grievance on July 17, 2013, again asking to see an outside neurologist of his choice. The response indicated: "You have been evaluated by MSP providers several times for the above symptoms. You have medications prescribed for these symptoms. Our providers findings do not indicate the need for outside specialty visit." (Doc. 1-1 at 27.) On July 28, 2013, Mr. Banschbach filed an appeal to the warden explaining that after only seeing Dr. Kohut from 2011 through 2013 and getting turned down for the medication Tramadol, he was finally able to see Dr. Perinion in June 2013 and was prescribed Tramadol and Gabapentin for nerve pain. He felt, however, that he should be seen by a certified neurologist. His appeal was denied on August 8,

2013.  (Doc. 1-1 at 26.)  His appeal to the corrections division, dated September 2, 2013, was denied on September 13, 2013.  (Doc. 1-1 at 24-25.)

With regard to grievance number 5361, Mr. Banschbach filed a grievance on March 20, 2014, complaining that he was completely cut off of his Amitriptyline medication.  He asked that he not be cut off his medications without warning and that he again be prescribed Amitriptyline.  The response indicated: "You have been scheduled to have your above issues addressed, however, you continue to refuse scheduled appointment.  I would encourage you to not refuse your appointments so you can discuss medication issues with the doctor."  (Doc. 1-1 at 33.)  He appealed the grievance to the warden on April 8, 2014, and was told: "You are receiving your Amitryptaline according to the records.  If this is not the case, please submit a med kite (HCK) to the Infirmary."  (Doc. 1-1 at 32.)  His appeal to the corrections division on this issue was denied on May 27, 2014, with the following response:

> Upon reviewing the records relating to your grievance, you were prescribed Amitriptyline, one tablet daily, beginning June 2013.  In May of this year, Amitriptyline was out of stock and a drug in the same class, Nortriptyline was prescribed.  This medication, like the Amitriptyline, is given once daily.  If the Noritriptyline is not working for you, please send a medical KITE to discuss with the physician.  Appeal denied.

(Doc. 1-1 at 30-31.)

## IV.  DISCUSSION

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner,* 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Once the defendant has carried

that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1858 (June 6, 2016), *citing Booth*, 532 U.S., at 737–38. Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' " *Id*. at 1859, *quoting Booth*, 532 U.S. at 738.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, __ U.S. at __, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When

rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

### A. Sexual Assault Allegations

Mr. Banschbach did not exhaust his administrative remedies regarding any alleged sexual assaults by Dr. Kohut. The only grievances filed on this issue were the November 4, 2015 informal resolution form, which was denied, and the

December 5, 2015 grievance form, which was not processed. (Doc. 11-4 at 1-2).

It is unclear whether the grievance process is complete once a grievance is marked as "not processed" and whether an inmate can appeal the decision to not process a grievance. If not, arguably there are no further "available remedies" once a grievance is marked as not processed and there are no further instructions on the grievance. Although some grievances that are returned as not processed may be resubmitted, the policy is not clear on whether every "not processed" grievance may be resubmitted. The only section of the grievance policy which discusses resubmitting a grievance is § III(F)(8):

> The GC will assure that the grievance form is complete, and will return an incomplete grievance form to the inmate with a written statement as to why it is not being processed. The inmate may resubmit the grievance form with the appropriate corrections, but must do so within 48 hours. If the resubmitted grievance is submitted late the GC will reject it.

A technical reading of the policy suggests that only incomplete grievance forms may be resubmitted within 48 hours. If a grievance is "not processed" for some other reason (such as timeliness) and there is no statement regarding resubmission on the grievance, it is not clear whether an inmate exhausted his remedies. The grievance policy regarding "not processed" grievances might be "so opaque that it becomes, practically speaking, incapable of use." *Ross*, __ U.S. at __, 136 S.Ct. at 1859.

Regardless, the Court need not decide this issue because Mr. Banschbach did not complete the grievance process regarding this issue before filing his lawsuit. Prisoners are required to exhaust the available administrative remedies prior to filing suit. *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Mr. Banschbach signed his Complaint on November 17, 2015,[1] and it was entered in the Court's filing system on December 9, 2015. (Doc. 1.) The response to Mr. Banschbach's formal grievance was dated December 14, 2015, five days after his Complaint was filed. Mr. Banschbach submitted his formal grievance after he signed his Complaint, and there was no response until after the Complaint had been filed in the Court. Even if the Court considered Mr. Banschbach's formal grievance to be the end of the exhaustion process, it was not completed prior to the filing of the Complaint. Mr. Banschbach did not exhaust his administrative remedies regarding any alleged sexual assaults prior to filing his Complaint, and those claims should be dismissed.

**B. Denial of Medical Care**

Mr. Banschbach describes his Complaint as an § 1983 action seeking

---

[1] Under the prison mailbox rule, a document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266 (1988) (establishing prison mailbox rule).

damages for deliberate indifference and sexual assault against Dr. Kohut. His

Complaint alleges that Dr. Kohut caused him physical pain by not giving him

Tramadol medication or cutting him off medication without warning. (Doc. 1.)

There is no dispute that Mr. Banschbach completed the grievance process

regarding the denial of medications. (SUF, Doc. 10 at ¶ 17.)

Defendant argues that Mr. Banschbach failed to exhaust his administrative

remedies because he did not grieve his theory of the case, i.e., that Dr. Kohut

withheld pain medications because he refused to submit to hernia checks. (Doc. 9

at 7.) This level of specificity is not mandated by the MSP grievance procedure,

which requires the following information:

> Description must include date and time incident occurred, attempts
> made to resolve, names of staff involved, description of any evidence,
> names of any witnesses. Name the person(s) you are grieving. WHAT
> did they do? WHEN did they do it? WHERE did this happen? &
> WHAT have you done so far to get the problem repaired?

(Grievance form, Doc. 1-1 at 5.) MSP grievance forms do not require inmates to

explain why they think the problem is occurring or what they believe the

perpetrators' reasons were for doing what they did. "When a prison's grievance

procedures are silent or incomplete as to factual specificity, a grievance suffices if

it alerts the prison to the nature of the wrong for which redress is sought." *Morton

v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (*quoting Griffin v. Arpaio*, 557 F.3d

15

1117, 1120 (9th Cir. 2009)).

"A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation." *Griffin*, 557 F.3d at 1120.

Mr. Banschbach did not properly grieve the alleged sexual assault by Dr. Kohut, but there is no dispute that he properly grieved the denial of medications. The motion for summary judgment on Mr. Banschbach's denial of medical care claim should be denied.

## V.    MOTION FOR TEMPORARY RESTRAINING ORDER

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the

granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id*. (citations and internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original). A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and

shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

Mr. Banschbach seeks a temporary restraining order to protect him from Dr. Kohut, who is allegedly denying Mr. Banschbach medical care because he filed grievances and this lawsuit against him. (Doc. 19.) Mr. Banschbach claims that Dr. Kohut allowed his prescription for chronic pain medication to run out even though Mr. Banschbach filed multiple requests to have his prescription renewed weeks in advance. (Doc. 19 at 5.) Specifically, he alleges that his prescription for Ultram needed to be renewed by April 7, 2016, and it was not renewed until April 14, 2016. (Doc. 19 at 6.) He alleges that being without his medication for this week caused a great deal of pain, nausea, diarrhea, anxiety, cold sweats, restless sleep, chronic nerve pain, inflamation, and muscle spasms. He alleges that medical staff refused to see him for these symptoms between April 9, 2016, and April 13, 2016. (Doc. 19 at 6.)

Mr. Banschbach does not meet the high standard for issuance of a temporary restraining order. While there maybe a factual question regarding whether Mr. Banschbach's medications were discontinued for a period of time in 2012-2013, he has not made a sufficient showing that he is likely to succeed on the merits. The Court is recommending that a significant number of Mr. Banschbach's claims be

dismissed for failure to exhaust and beyond the Court's finding that Mr. Banschbach stated a claim for denial of medical care, there has been no showing regarding the potential success on the merits of such a claim. In fact, Mr. Banschbach has a large burden to overcome because a review of the grievances attached to the Complaint suggests that there was merely a disagreement between Dr. Kohut and Mr. Banschbach regarding what medications were necessary to treat his medical issues. "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not [without more] amount to deliberate of indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds, Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014). To establish that the difference of opinion rises to the level of deliberate indifference, a prisoner must show that the defendant's chosen course of treatment was medically unacceptable and in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). There has not yet been any such showing in this case.

Mr. Banschbach must next show that he is likely to suffer irreparable harm in the absence of the injunction. Mr. Banschbach alleges he was denied his medication for one week. Although he apparently suffered greatly during that

week, his medications have now been renewed, and there is no indication that he was or will be again denied his medications.  Since he is currently back on his medications and there is no evidence to suggest that he will be taken off those medications in the future, he has not met his burden of showing of irreparable harm.

Third, to the extent the relief he seeks is to be seen by an outside physician until the case is resolved, the Court does not have jurisdiction over any other individual or entity to require them to send Mr. Banschbach to a physician outside of the Department of Corrections.  As a general rule courts are unable to issue orders against individuals who are not parties to a suit pending before it.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969); *Zepeda v. United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").  Dr. Kohut is the only named defendant, and while the Court could order Dr. Kohut to no longer treat Mr. Banschbach, it does not have jurisdiction to order non-parties to provide him with different or special medical care.  The request for injunctive relief should be denied.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendant's Motion for Summary Judgment (Doc. 8) should be **GRANTED IN PART** and **DENIED IN PART**.  Mr. Banschbach's claim that Dr. Kohut sexually assaulted him should be **DISMISSED**.  Mr. Banschbach's denial of medical care claim should be allowed to proceed.

2.  Mr. Banschbach's Motion for Temporary Restraining Order (Doc. 19) should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a) should not be filed until entry of the District Court's final judgment.

DATED this 18th day of August, 2016.

---

[2]  As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

/s/ John Johnston
John Johnston
United States Magistrate